1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GARY W. SCHONS
   Senior Assistant Attorney General
4  MATTHEW MULFORD
   Deputy Attorney General
5  ANDREW MESTMAN, State Bar No. 203009
   Deputy Attorney General
6   110 West A Street, Suite 1100
    San Diego, CA 92101
7   P.O. Box 85266
    San Diego, CA 92186-5266
8   Telephone: (619) 645-2458
    Fax: (619) 645-2271
9   Email: Andrew.Mestman@doj.ca.gov

10 Attorneys for Respondent

11             IN THE UNITED STATES DISTRICT COURT

12          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14 **ANTONIO MICHAEL VITALE,**                    08-0331 JLS (WMc)

15                              Petitioner,    **MEMORANDUM OF
                                               POINTS AND
16          **v.**                             AUTHORITIES IN
                                               SUPPORT OF ANSWER
17 **JAMES TILTON, Secretary,**                TO PETITION FOR WRIT
                                               OF HABEAS CORPUS**
18                              Respondent.
                                               Honorable William McCurine, Jr.
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................... 1

STATEMENT OF THE CASE ........................................................ 2

STATEMENT OF FACTS ............................................................. 3

      A.   Prosecution Case ............................................................. 3

            1.   Victoria S. ................................................................ 3

            2.   Margaret W. ............................................................ 4

            3.   Investigation ........................................................... 5

            4.   Later Investigation ................................................. 5

      B.   Defense Case .................................................................. 7

ARGUMENT ................................................................................. 7

   I.     THE STATE COURT REASONABLY AND PROPERLY
         REJECTED PETITIONER'S CLAIMS ............................... 7

   II.    THE STATE COURTS REASONABLY AND PROPERLY HELD
         THERE WAS SUFFICIENT EVIDENCE OF FORCIBLE RAPE
         AND FORCIBLE ORAL COPULATION .............................. 9

      A.   Background ..................................................................... 9

      B.   Analysis .......................................................................... 10

   III.   THE COURT OF APPEAL REASONABLY AND PROPERLY
         HELD THAT THE INSTRUCTIONS WERE CORRECT AND
         THERE WAS NO EVIDENCE SUPPORTING  VITALE'S
         PROPOSED INSTRUCTION REGARDING A REASONABLE
         AND GOOD FAITH BELIEF IN CONSENT AS A DEFENSE TO
         THE CHARGED GRIMES ................................................ 11

   IV.   CLAIM THREE HAS FAILS TO STATE A FEDERAL
         CONSTITUTIONAL QUESTION; CLAIM THREE ALSO FAILS
         ON THE MERITS ............................................................. 16

      A.   Background ..................................................................... 16

      B.   Vitale fails to State a Claim Which is Cognizable on Federal Habeas Corpus ............ 17

CONCLUSION ............................................................................. 21

1

# TABLE OF AUTHORITIES

2                                                                    **Page**

3  **Cases**

4
5  Alberni v. McDaniel
   458 F.3d 860 (9th Cir. 2006)                                        19

6  Alvarado v. Hill
   252 F.3d 1066 (9th Cir. 2001)                                       19
7
   Bains v. Cambra
8  204 F.3d 964 (9th Cir. 2000)                                         9

9  Bradley v. Duncan
   315 F.3d 1091 (9th Cir. 2002)                                     14, 15
10
   Bradshaw v. Richey
11 566 U.S. 74
   126 S. Ct. 602
12 163 L. Ed. 2d 407 (2005)                                          11, 14

13 Brecht v. Abrahamson
   507 U.S. 619
14 113 S. Ct 1710
   123 L. Ed. 2d 353 (1993)                                     9, 12, 15, 20
15
   Calderon v. Coleman
16 525 U.S. 141
   119 S. Ct. 500
17 142 L. Ed. 2d 521 (1998)                                            12

18 Carey v. Musladin
   127 S. Ct. 649
19 166 L. Ed. 2d 482 (2006)                                          8, 19

20 Carriger v. Lewis
   971 F.2d 329 (9th Cir. 1992)                                        12
21
   Clark v. Murphy
22 331 F.3d 1062 (9th Cir. 2003)                                        8

23 Crawford v. Washington
   541 U.S. 36
24 124 S. Ct. 475
   116 L. Ed. 2d 385 (2004)                                            20
25
   Duckett v. Godinez
26 67 F.3d 734 (9th Cir. 1995)                                         12

27 Dunckhurst v.Deeds
   859 F.2d 110 (1988)                                                 12
28

08-0331 JLS (WMc)

**TABLE OF AUTHORITIES** **(continued)**

**Page**

Engle v. Isaac
456 U.S. 107
102 S. Ct. 1558
71 L. Ed. 2d 783 (1982                                              17

Estelle v. McGuire
502 U.S. 62
112 S. Ct. 475
116 L. Ed. 2d 385 (1991)                                           12

Garceau v. Woodford
275 F.3d 769 (9th Cir. 2001)                                       19

Gordon v. Duran
895 F.2d 610 (9th Cir. 1990)                                       17

Henderson v. Kibbe
431 U.S. 145
97 S. Ct. 1730
52 L. Ed. 2d 2003 (1977)                                           12

Holgerson v. Knowles
309 F.3d 1200 (9th Cir. 2002)                                      19

In re Winship
397 U.S. 358
90 S. Ct. 1068
122 L. Ed. 2d 368 (1970)                                           10

Jackson v. Virginia
443 U.S. 307
99 S. Ct. 278
61 L. Ed. 2d 560 (1979)                                         10, 11

Jammal v. Van de Kamp
926 F.2d 918 (9th Cir. 1991)                                       17

Juan H. v. Allen
408 F.3d 1262 (9th Cir. 2005)                                      11

Kotteakos v. United States
328 U.S. 750
66 S. Ct. 1239
90 L. Ed. 1557 (1946)                                               9

Langford v. Day
110 F.3d 1380 (9th Cir. 1996)                                      17

08-0331 JLS (WMc)

## TABLE OF AUTHORITIES  (continued)

Page

Lindh v. Murphy
521 U.S. 320
117 S. Ct. 2059
138 L. Ed. 2d 481 (1997)                                                  8

Lockyer v. Andrade
538 U.S. 63
123 S. Ct. 1166
155 L. Ed. 2d 144 (2003)                                                7, 8

Menendez v.Terhune
422 F.3d 1012 (9th Cir. 2005)                                             12

Park v. California
202 F.3d 1146 (9th Cir. 2000)                                            17

Payne v. Borg
982 F.2d 335 (9th Cir. 1992)                                             10

People v. Combs
34 Cal. 4th 821 (2004)                                                   20

People v. Falsetta
21 Cal. 4th 903 (1999)                                                   18

People v. Johnson
26 Cal. 3d 557
162 Cal. Rptr. 431
606 P.2d 738 (1980)                                                     10

People v. May
213 Cal. App. 3d 118 (1989)                                             12

People v. May
213 Cal. App. 3d 118 (1989)                                             12

People v. Mayberry
15 Cal. 3d 143 (1975)                                               11-13, 15

People v. Watson
46 Cal. 2d 818
299 P.2d 243 (1956)                                                      9

People v. Williams
4 Cal. 4th 354 (1992)                                               12, 13, 15

Spivey v. Rocha
194 F.3d 971 (9th Cir. 1999)                                            17

08-0331 JLS (WMc)

## TABLE OF AUTHORITIES  (continued)

                                                                          **Page**

Summer v. Mata
449 U.S. 539
101 S. Ct. 764
66 L. Ed. 2d 722 (1981)                                                        3

United States v. Guardia
135 F.3d 1326 (10th Cir. 1998)                                                 18

United States v. Penagos
823 F.2d 346 (9th Cir. 1987)                                                   10

United States v. Sioux
362 F.3d 1241 (9th Cir. 2004)                                                  18

United States v. Winn
577 F.2d 86 (9th Cir. 1978 )                                                   10

Villafuerte v.Stewart
111 F.3d 616 (9th Cir. 1997)                                                   12

Williams v. Taylor
529 U.S. 362
120 S. Ct. 1495
146 L. Ed. 2d 389 (2000)                                                        8

Woodford v. Garceau
538 U.S. 202
123 S. Ct. 1398
155 L. Ed. 2d 363 (2003)                                                       19

Woodford v. Visciotti
537 U.S. 19
123 S. Ct. 357
154 L. Ed. 2d 279 (2002)                                                     8, 19

**Constitutional Provisions**

Sixth Amendment                                                             16, 20

Fourteenth Amendment                                                        16, 19

TABLE OF AUTHORITIES  (continued)

Page

**Statutes**

28 United States Code
    § 2254(a) ........................................ 17
    § 2254(e)(1) ................................... 3
    § 2254(d) ...................................... 7
    § 2254(d)(1) .......................... 8, 13, 19

California Evidence Code
    § 1108 ...................................... 2, 16-18

Evidence Code
    § 1101 ........................................ 18
    § 1108, subd. (d)(1) ....................... 18

**Court Rules**

Federal Rule of Evidence
rule 413(a) ..................................... 17

**Other Authorities**

137 Congressional Record 6032 (1991) ........... 18

140 Congressional Record  S12990 (1994)
(statement of Rep. Dole) ...................... 18

140 Congressional Record H8968-01, H8991 (Aug. 21, 1994)
(statement of S. Molinari) .................... 18

140 Congressional Record 23603 (1994)
(statement of Rep. Molinari) .................. 18

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) ... 7, 8, 11, 19

CALJIC No.
    10.65 ..................................... 11, 15

Comprehensive Violent Crime Control Act of 1991 ........ 18

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GARY W. SCHONS
    Senior Assistant Attorney General
4   MATTHEW MULFORD
    Deputy Attorney General
5   ANDREW MESTMAN, State Bar No. 203009
    Deputy Attorney General
6   110 West A Street, Suite 1100
    San Diego, CA 92101
7   P.O. Box 85266
    San Diego, CA 92186-5266
8   Telephone: (619) 645-2458
    Fax: (619) 645-2271
9   Email: Andrew.Mestman@doj.ca.gov

10   Attorneys for Respondent

11           IN THE UNITED STATES DISTRICT COURT

12         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14   **ANTONIO MICHAEL VITALE,** | 08-0331 JLS (WMc) |
| 15                   Petitioner, | **MEMORANDUM OF POINTS AND AUTHORITIES IN** |
| 16     v. | **SUPPORT OF ANSWER TO PETITION FOR WRIT OF** |
| 17   **JAMES TILTON, Secretary,** | **HABEAS CORPUS** |
| 18              Respondent. | Honorable William McCurine, Jr. |

19

20

21                 **INTRODUCTION**

22       Petitioner Antonio Michael Vitale sexually assaulted two prostitutes who

23 refused to comply with his sexual and physical demands.  Vitale was convicted of

24 three counts of forcible rape and four counts of forcible oral copulation, and was

25 sentenced to thirty years to life plus twelve years in state prison.

26       Vitale argues in his Petition for a Writ of Habeas Corpus that: (1) the

27 evidence was insufficient evidence to support his convictions; (2) the trial court erred

28 by failing to instruct the jury on the petitioner's mistaken, but good faith belief that

1  the victims consented to the charged sexual acts; and (3) the trial court erred by

2  admitting evidence pursuant to California Evidence Code section 1108.    The

3  California courts rejected each of these claims. The state's denial of these claims was

4  reasonable and proper and warrants deference under AEDPA.

5

**STATEMENT OF THE CASE**

6

7  On March 25, 2005, following a jury trial, Vitale was found guilty of three

8  counts of forcible rape and four counts of forced oral copulation. (Lodgment 2, 2 CT

9  317-330.)  The trial court sentenced Vitale to thirty years to life plus twelve years in

10  state prison.  (Lodgment 2, 2 CT 292-295, 331.)

11  Vitale  appealed his conviction to the California Court of Appeal, claiming:

12  (1) the evidence was insufficient to support his convictions;  (2) the trial court erred

13  by failing to instruct the jury on the his mistaken, but good faith belief that the

14  victims consented to the charged sexual acts; and (3) the trial court erred by admitting

15  evidence under California Evidence Code section 1108.  (Lodgment   3.)  The

16  appellate court affirmed the convictions.  (Lodgment 9.)  Vitale filed a petition for

17  review in the California Supreme Court, raising all three direct appeal issues, which

18  was denied on November 29, 2006.  (Lodgements 12, 13.)

19  On February 21, 2008, Vitale filed his Petition in the Court. On February 25,

20  2008, this Court ordered Respondent to file an answer or other responsive pleading

21  to the Petition for Writ of Habeas Corpus.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

08-0331 JLS (WMc)

1

2                                **STATEMENT OF FACTS**[1]

3    **A.  Prosecution Case**

4        **1.  Victoria S.**

5        In the spring or summer of 2003, 16-year-old Victoria S. was
         working as a prostitute on El Cajon Boulevard in San Diego
6        when [Vitale] pulled up to her in a car and asked if she wanted a
         ride. She declined. [Vitale] asked again. Victoria got into his car.
7        Victoria asked [Vitale] to prove he was not a police officer.
         [Vitale] exposed his penis and Victoria touched it. The pair began
8        driving to [Vitale]'s apartment in the Clairemont section of San
         Diego.
9
         As they drove, Victoria mentioned she was 20 years old. [Vitale]
10       told her he would pay more if she were younger. Victoria told
         [Vitale] she was 16. Victoria asked [Vitale] what he wanted her
11       to do. She could not remember whether he wanted only oral sex
         or also wanted intercourse. After the two agreed on a price,
12       [Vitale] told Victoria he wanted to do something "different."
         [Vitale] told her it involved pulling her hair lightly. Victoria
13       agreed. He then stated he wanted to spank her gently with a
         paddle.
14
         This request frightened her and Victoria changed her mind about
15       being with [Vitale]. Victoria thought [Vitale] looked "crazy." She
         told [Vitale] she did not want to go with him and attempted to get
16       out of the car. [Vitale] told her not to get out, she was coming
         with him. As the two drove, Victoria asked [Vitale] questions
17       about himself. [Vitale] stopped at an ATM machine and got
         money. Victoria did not leave because she was afraid of [Vitale].
18
         When they arrived at the door to [Vitale]'s apartment, he told her
19       to call him "pedophile" and threatened to hurt her if she did not.
         Victoria asked if he was proud of being a pedophile. [Vitale]
20       stated he was. He then grabbed her by the neck and threw her into
         his apartment. [Vitale] told Victoria to act as if she was 12 years
21       old. She was frightened and believed [Vitale] was going to kill
         her.
22
         As they sat on the couch, [Vitale] told Victoria to orally copulate
23       him. Victoria testified she was naked and believed she had
         undressed herself. Victoria asked [Vitale] to wear a condom, he
24       refused. Victoria did not want to orally copulate [Vitale]. As she
         orally copulated him, he urinated in her mouth. When Victoria
25
   _____

26       1.  The Factual Background is taken virtually verbatim from the state court of appeal's
27   unpublished opinion. (Lodgment 9.)    Those facts are presumed to be correct.  28 U.S.C. §
     2254(e)(1); See Summer v. Mata, 449 U.S. 539, 546-48, 101 S. Ct. 764, 66 L. Ed. 2d 722
28   (1981)(regarding appellate factfinding)

protested, [Vitale] asked her if she could "handle that." Victoria replied she could not. Afraid of [Vitale], she then stated that she could. [Vitale] threw her to the floor and raped her. He then forced her to orally copulate him, choked her and again urinated in her mouth. [Vitale] pulled Victoria's hair and forcibly made her orally copulate him. When Victoria vomited, [Vitale] stated: "Good girl. That's a good girl. I'll pay you more."

[Vitale] then pulled Victoria by the hair into a bedroom. He put her face down on the bed and struck her twice on the buttocks with a paddle. When she cried out in pain, [Vitale] yelled at her and told her to say: "Yes, pedophile" or "No, pedophile." [Vitale] struck Victoria with the paddle twice more on her buttocks.

The pair returned to the living room where the two again had intercourse and where [Vitale] again made Victoria orally copulate him. [Vitale] then made her get into a bathtub and yelled that she was "nothing but a 12-year-old little whore." Victoria asked [Vitale] if he wanted to hurt her. [Vitale] replied: "Oh, bitch, you don't know."

As the two were leaving the apartment, Victoria, angry, asked [Vitale] if he was going to pay her. He stated he already had. He had not. [Vitale] and Victoria walked to the underground garage and got into [Vitale]'s vehicle. Victoria asked [Vitale] if he was a "cop." [Vitale] stated that he was. Victoria got out of the car and walked out of the garage. [Vitale] followed, asking where she was going. Victoria ran and eventually got a ride to another location where she called her friend Christopher Larkins. When he arrived, Victoria was crying and wanted to leave the area. She told Larkins she had been raped. Later, she showed him two or three paddle marks on her inner thigh and buttocks. She did not call the police because she was a runaway and a prostitute and thought the police would laugh at her.

## 2.    Margaret W.

On May 23, 2003, 17-year-old Margaret W. was working as a prostitute on El Cajon Boulevard. [Vitale] drove up to her and offered her $300 if she would spank him with a paddle. There was no discussion of sex acts and no price was negotiated for such acts. It was not Margaret's intention that $300 would cover anything other than spanking [Vitale] with a paddle. Margaret got into [Vitale]'s car and they drove to his apartment. In the apartment, [Vitale], who appeared angry, told Margaret he was a vice officer and that if she did not do what she was told, he would take her to jail. Margaret did not know whether [Vitale] was a vice officer but thought he might be. She was afraid he might take her to jail. Margaret was fearful but did not try to leave because she thought [Vitale] might hurt her. Margaret, afraid of [Vitale] and believing she was in danger, began to sob.

[Vitale] told Margaret to say she was 15 years old every chance she had. As the two sat on the couch, [Vitale] pulled down his pants and told Margaret to orally copulate him. Crying, Margaret

complied. After a few minutes [Vitale] put Margaret on the floor and orally copulated her. Margaret was afraid [Vitale] might hurt or kill her. Refusing Margaret's request he use a condom, [Vitale] placed his penis in her vagina. Margaret did not want to have intercourse with [Vitale]. [Vitale] ejaculated on her chest. Margaret wiped the semen off her body with paper towels. Margaret, crying hysterically, ran from [Vitale]'s apartment.

Carolyn Quinn and her husband were driving by [Vitale]'s apartment building in Clairemont when they saw Margaret running out the structure, screaming that she had been raped and needed help. As Quinn tried to help her, Margaret, who was hysterical, pointed to [Vitale] as he crossed the street and stated: "He raped me." [Vitale] replied sarcastically: "Yeah, I raped her." Over Margaret's objection, Quinn called the police.

### 3.  Investigation

In response to the report of a rape, Officer Charles Dunnigan contacted Margaret near [Vitale]'s apartment. Margaret identified herself as Reyna Chanyet. She did so because she was underage and did not want her family to discover she was a prostitute. For the same reasons, Margaret falsely told the officer she had been forcibly abducted. Margaret took the officer to [Vitale]'s apartment where she stated she was sexually assaulted. [Vitale] was not there.

Later that night, officers, pursuant to a warrant, searched [Vitale]'s apartment. They found a paddle under the sofa and paper towels that testing later revealed contained semen that was likely that of [Vitale].

Officers returned to [Vitale]'s apartment on May 27, 2003. It did not appear he had returned after the May 23, 2003, search of the residence. On May 24, 2003, [Vitale] called a coworker and asked for a place to stay for a few days. [Vitale] told his friend he had tried but failed to contact her the night before and had stayed at a motel. [Vitale], without luggage, arrived at his friend's residence and slept three nights on her couch. During those three days, [Vitale] did not go to work and did not want to drive his car.

A few days after she was assaulted, Margaret, without telling the officers her true name or that she was leaving, returned to her home in Florida. The investigation of the crime came to an end.

### 4.  Later Investigation

As part of an unrelated investigation, Victoria S. told an officer she had been sexually assaulted and could show the officer the location were the crime occurred. On January 7, 2004, Victoria took the officer to [Vitale]'s apartment. The officer discovered that [Vitale] was a suspect in the May 2003 sexual assault on Reyna Chanyet. The officer could not locate Chanyet.

On February 10, 2004, officers served a search warrant on [Vitale]'s apartment. They found a paddle, a police uniform and pornographic videotapes, including ones involving urination in the mouth of another person. The officers determined that [Vitale] had been in Thailand from December 2003 until January 2004. The officers found a videotape labeled "Thai." The videotape showed [Vitale] slapping a Thai woman, then forcing her to orally copulate him. After the woman vomited, [Vitale] states: "Good girl."

On March 3, 2004, [Vitale] telephoned Officer Daniel Vile who was investigating the cases. In a lengthy telephone interview, [Vitale] discussed his sexual history and stated he had never committed a rape. [Vitale] also discussed his encounter with Margaret W. and in a less specific way his encounter with Victoria S.

When the officer asked [Vitale] about Margaret running from his apartment, he stated she was unhappy because she did not get as much money as she wanted and because [Vitale] was not willing to drive her back to El Cajon Boulevard. [Vitale] stated he wanted to have intercourse with Margaret without a condom. Margaret agreed but when the act was over she changed her mind and was angry she had sex without a condom. [Vitale] stated he gave Margaret no money. He stated: "She started being a bitch and yelling." He offered her money and told her to get out. She left the apartment, saying she had been raped. [Vitale] stated Margaret tore her own clothes and that he did not grab her in a hard manner.

At first it did not appear that [Vitale], who had been with many prostitutes, specifically remembered Victoria. Later in the interview, he seemed to recollect who the officer was referring to. He said there was no rape and he had not urinated in her mouth. In any case, [Vitale] told the officer he had never asked a woman to call him pedophile. Later in the interview, [Vitale] stated he had urinated in prostitutes' mouths. [Vitale] stated he had never paddled a prostitute.

In explaining why Victoria and Margaret would claim he raped them, [Vitale] stated that prostitutes are crazy, the two women probably knew each other and decided, perhaps because of the bad end to his encounter with Margaret, to get him in trouble. [Vitale] also stated that on a number of occasions he told prostitutes he was a "reporter" for the police, that he had connections with the police and knew vice officers. [Vitale] stated he would tell the women that if they would "do this for me or that for me" he would make sure the police would leave them alone. [Vitale] speculated that when the women found out he had no such connections, they were angry because he had "conned" them.

[Vitale] also discussed the circumstances surrounding the videotape made in Thailand. [Vitale] stated the Thai woman was probably 25 to 29 years of age. She was a prostitute he paid to

1  engage in sex acts. [Vitale] admitted slapping her and that being
   struck frightened the woman. [Vitale] noted he had not beaten the
2  girl to death. When the officer stated the girl looked "pretty
   scared," [Vitale] replied: "Well, yeah. And that was the whole
3  idea."

4  In October 2004 an investigator for the district attorney's office
   determined that Reyna Chanyet was Margaret W. The
5  investigator contacted Margaret in Florida. She related [Vitale]'s
   sexual assault on her and agreed to testify against him.

6

**B.  Defense Case**

7

8  [Vitale] did not testify. [Vitale]'s neighbor saw [Vitale] in the
   apartment complex garage with a young woman on the May
9  evening police would later come to the complex. The defense
   presumed this woman was Margaret W. It did not appear to
10 [Vitale]'s neighbor that the woman was under duress. It was the
   defense position that all charged acts were consensual.

11 (Lodgment 6 at 3-8.)

12

13                          **ARGUMENT**

14                             **I.**

15 **THE STATE COURT REASONABLY AND PROPERLY
   REJECTED PETITIONER'S CLAIMS**

16

17        Vitale's claims in Grounds One through Three of his Petition were

18 previously denied by the state courts on the merits.  When a state court has

19 adjudicated a Petitioner's claim on the merits, the Antiterrorism and Effective Death

20 Penalty Act of 1996 (AEDPA) prohibits a federal court from granting habeas relief

21 unless the state court's determination was "contrary to" or involved an "unreasonable

22 application of" clearly established Supreme Court precedent, or is "based on an

23 unreasonable determination of the facts in light of the evidence presented at the State

24 court proceeding."  28 U.S.C. § 2254(d).  A state court decision is "contrary to"

25 Supreme Court precedent if the state court (1) applies a rule that contradicts Supreme

26 Court precedent or (2) confronts a set of facts "materially indistinguishable" from a

27 relevant Supreme Court decision and nevertheless arrives at a different result.

28 Lockyer v. Andrade, 538 U.S. 63, 73, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003);

1  <u>Williams v. Taylor</u>, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

2  A state court's decision may be an "unreasonable application of" Supreme Court

3  precedent if the state court identified the correct governing legal principle but

4  unreasonably applied that principle to the facts of the prisoner's case. <u>Andrade</u>, 538

5  U.S. at 75; <u>Williams</u>, 529 U.S. at 413.   The "unreasonable application" clause

6  requires the state court decision to be more than incorrect or erroneous.   The state

7  court's determination must be "objectively unreasonable." <u>Andrade</u>, 538 U.S. at 75;

8  <u>Williams</u>, 529 U.S. at 409-11.   In determining what constitutes "clearly established

9  federal law" for purposes of the deference standard, only United States Supreme

10  Court holdings from the time the state court rendered its decision are controlling, but

11  not dicta and not circuit court authority. <u>Carey v. Musladin</u>, 127 S. Ct. 649, 653, 166

12  L. Ed. 2d 482 (2006).

13       As stated by the Supreme Court, § 2254(d)(1) imposes a "highly deferential

14  standard for evaluating state-court rulings," <u>Lindh v. Murphy</u>, 521 U.S. 320, 333 n.7,

15  117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and "demands that state court decisions

16  be given the benefit of the doubt." <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24, 123 S. Ct.

17  357, 154 L. Ed. 2d 279 (2002) (per curiam).   As the Ninth Circuit stated, "This

18  deferential review in habeas cases is premised on the fact that the state courts, as part

19  of a co-equal judiciary, are competent interpreters of federal law deserving of our full

20  respect." <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003) (citing <u>Williams v.</u>

21  <u>Taylor</u>, 529 U.S. at 403).   A federal habeas court is not asked to decide whether it

22  agrees with a state court's determination: "[W]e express no 'independent' opinion

23  on the merits of the constitutional claim.   Under AEDPA, the *only* question we are

24  asked to decide is whether the state court's determination ... was objectively

25  unreasonable ...." <u>Id.</u>, at 1072-73.

26       Finally, even when a state court's determination is contrary to, or an

27  unreasonable application of, clearly established Supreme Court authority, habeas

28  relief is not warranted unless Vitale can establish that the error "'had substantial and

1  injurious effect or influence in determining the jury's verdict.'"  <u>Brecht v.</u>

2  <u>Abrahamson</u>, 507 U.S. 619, 637, 113 S. Ct 1710, 123 L. Ed. 2d 353 (1993), (quoting

3  <u>Kotteakos v. United States</u>, 328 U.S. 750, 776, 66 S. Ct. 1239, 90 L. Ed. 1557

4  (1946).)  In other words, relief is warranted only when Vitale shows it is reasonably

5  probable that he would have obtained a more favorable verdict if the state court had

6  not erred.  <u>Bains v. Cambra</u>, 204 F.3d 964, 971 n. 2 (9th Cir. 2000) (equating <u>Brecht</u>

7  standard with California's state law standard; <u>see</u> <u>People v. Watson</u>, 46 Cal. 2d 818,

8  836, 299 P.2d 243 (1956).)

9        The Petition for Writ of Habeas Corpus in this case does not demonstrate that

10  the state courts violated Vitale's federal constitutional rights in any way, or that the

11  state courts either applied the federal Constitution unreasonably or made an

12  unreasonable determination of the facts.

13  **II.**

14  **THE STATE COURTS REASONABLY AND PROPERLY**
    **HELD THERE WAS SUFFICIENT EVIDENCE OF**
15  **FORCIBLE RAPE AND FORCIBLE ORAL COPULATION**

16

17        In Ground One, Vitale contends that the evidence was insufficient to support

18  his convictions for the crimes of forcible rape and forcible oral copulation.  (Pet. at

19  8-14.)  The state courts rejected this claim in a decision that is reasonable on the law

20  and the facts, so habeas relief must be denied.

21  **A.  Background**

22        In his direct appeal, Vitale argued the evidence was insufficient to support

23  his convictions for forcible rape and forcible oral copulation, asserting the evidence

24  showed the victims consented.  (Lodgment 3 at 13-22.)

25        The California Court of Appeal considered this argument and rejected it.

26  The Court of Appeal found, with regard to victim Victoria S., that there was sufficient

27  evidence that Victoria's participation in sex acts with appellant was nonconsensual

28  and did not occur as a result of her free will.  (Lodgment 9 at 12-13.)  The Court of

1  Appeal stated that sufficient evidence supported Victoria's claim she did not want to

2  engage in the acts.  According to the Court of Appeal, the evidence supported the

3  conclusion Victoria "did not want to be around appellant and certainly did not want

4  to engage in sexual relations with him" and the sex acts were nonconsensual.

5  (Lodgment 9 at 13.)

6          With regard to victim Margaret W. the Court of Appeal concluded that the

7  evidence supported the conclusion that Margaret W's submission to appellant was not

8  an act of free will and, thus, was not consensual.  (Lodgment 9 at 13-14.)

9      **B.  Analysis**

10          As a matter of federal constitutional law, "the Due Process Clause protects

11  an accused against conviction except upon proof beyond a reasonable doubt of every

12  fact necessary to constitute the crime with which he is charged."  In re Winship, 397

13  U.S. 358, 364, 90 S. Ct. 1068, 122 L. Ed. 2d 368 (1970).  Under Jackson v. Virginia,

14  443 U.S. 307, 319, 99 S. Ct. 278, 61 L. Ed. 2d 560 (1979), a reviewing court

15  examines the evidence in the light most favorable to the prosecution and asks whether

16  "any rational trier of fact could have found the essential elements of the crime beyond

17  a reasonable doubt."  Jackson, 443 U.S. at 319; see also United States v. Penagos, 823

18  F.2d 346, 347 (9th Cir. 1987).  "All reasonable inferences from the evidence must be

19  drawn favorably to the Government as the prevailing party."  United States v. Winn,

20  577 F.2d 86, 91 (9th Cir. 1978 ).  Circumstantial evidence is sufficient to support a

21  conviction and prove specific intent, and the reviewing court is required to uphold the

22  conviction even if "[i]nferences to the contrary would also be rational."  Payne v.

23  Borg, 982 F.2d 335, 341 (9th Cir. 1992).  Finally, under Jackson, sufficiency of

24  evidence claims are judged by the elements as defined by state law.  Jackson, 443

25  U.S. at 324 n. 16.

26          It is well established that the California courts review claims of insufficient

27  evidence using the standard enunciated in Jackson.  See People v. Johnson, 26 Cal.

28  / / /

08-0331 JLS (WMc)

1  3d 557, 578, 162 Cal. Rptr. 431, 606 P.2d 738 (1980) (citing <u>Jackson v. Virginia</u>, 443

2  U.S. 307).

3          In the current matter, the state court of appeal carefully evaluated the

4  evidence from the trial in view of the functional equivalent of the deferential standard

5  required by <u>Jackson v. Virginia</u>.  As the state court aptly reasoned, a rational juror

6  could find that neither victim consented to petitioner's sexual acts. (Lodgment 9 at

7  12-14.) The state court's determination is perfectly reasonable regarding federal law,

8  in light of the circumstances of Vitale's crimes.  The state court's decision is

9  unassailable as to state law.  <u>Bradshaw v. Richey</u>, 566 U.S. 74, 126 S. Ct. 602, 163

10 L. Ed. 2d 407 (2005).  Their conclusion is reasonable under the standard of review

11 set forth in the AEDPA.  <u>See</u> <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274-75 & n. 13 (9th

12 Cir. 2005).  Accordingly, this claim must be denied.

13                                         **III.**

14        **THE COURT OF APPEAL REASONABLY AND PROPERLY**
          **HELD THAT THE INSTRUCTIONS WERE CORRECT AND**
15        **THERE WAS NO EVIDENCE SUPPORTING VITALE'S**
          **PROPOSED INSTRUCTION REGARDING A REASONABLE**
16        **AND GOOD FAITH BELIEF IN CONSENT AS A DEFENSE**
          **TO THE CHARGED GRIMES**

17

18          In Ground Two, Vitale contends that he was denied due process of law when

19 the trial court refused to instruct the jury, pursuant to <u>People v. Mayberry</u>, 15 Cal. 3d

20 143 (1975), that a reasonable and good faith belief in consent is a defense to a charge

21 of forcible rape and oral copulation (CALJIC No. 10.65). (Pet. at 14-19.) The Court

22 of Appeal rejected this claim in a decision that is reasonable on the law and the facts,

23 so habeas relief must be denied.

24          In his direct appeal, Vitale argued the trial court erred in refusing the defense

25 request for the <u>Mayberry</u> instruction regarding a defendant's mistaken, but good faith

26 belief that the complainant consented to the sex acts. (Lodgment 3 at 22-29.)

27 ///

28 ///

1    The state appellate court concluded that the trial court did not err by not

2  giving the instruction because there was insubstantial evidence to warrant a <u>Mayberry</u>

3  instruction. (Lodgment 9 at 17-18.)

4    Generally, alleged errors in a state court's jury instructions do not provide a

5  basis for habeas relief absent a showing that the instructions infected the entire trial

6  to such an extent that the petitioner was denied due process. <u>Estelle v. McGuire</u>, 502

7  U.S. 62, 75, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); <u>Dunckhurst v.Deeds</u>, 859 F.2d

8  110, 114 (1988); <u>Carriger v. Lewis</u>, 971 F.2d 329, 334 (9th Cir. 1992) (en banc).

9  Whether a constitutional violation has occurred depends upon the evidence in the

10  case as well as the trial court's overall instructions to the jurors. <u>Duckett v. Godinez</u>,

11  67 F.3d 734, 745 (9th Cir. 1995). Where the alleged error stems from the failure to

12  give an instruction, the petitioner's burden is "especially heavy," because "[a]n

13  omission or incomplete instruction is less likely to be prejudicial than a misstatement

14  of the law." <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155, 97 S. Ct. 1730, 52 L. Ed. 2d 203

15  (1977); <u>Villafuerte v.Stewart</u>, 111 F.3d 616, 624 (9th Cir. 1997). "'Failure to give [a

16  jury] instruction which might be proper as a matter of state law,' by itself, does not

17  merit federal habeas relief." <u>Menendez v.Terhune</u>, 422 F.3d 1012, 1029 (9th Cir.

18  2005) (citation omitted). If a court finds a constitutional error, it must then determine

19  whether the error had a substantial and injurious effect or influence on the jury's

20  verdict before granting habeas relief. <u>Calderon v. Coleman</u>, 525 U.S. 141, 146, 119

21  S. Ct. 500, 142 L. Ed. 2d 521 (1998)(per curiam)(citing <u>Brecht v. Abrahamson</u>, 507

22  U.S. at 637.)

23    In California, a defendant's reasonable and good faith mistake of fact

24  regarding a person's consent to rape is a defense to such a charge and is known as the

25  <u>Mayberry</u> defense. <u>People v. Mayberry</u>,15 Cal. 3d at 155; <u>People v. May</u>, 213 Cal.

26  App.  3d 118, 125 (1989).  The <u>Mayberry</u> defense has two components, one

27  subjective and the other objective. <u>People v. Williams</u>, 4 Cal. 4th 354, 360 (1992).

28  / / /

1    The subjective component asks whether the defendant honestly and
     in good faith, albeit mistakenly, believed that the victim consented
2    to sexual intercourse. In order to satisfy this component, a defendant
     must adduce evidence of the victim's equivocal conduct on the basis
3    of which he erroneously believed there was consent. [¶] In addition,
     the defendant must satisfy the subjective component, which asks
4    whether the defendant's mistake regarding consent was
     unreasonable under the circumstances. Thus, regardless of how
5    strongly a defendant may subjectively believe a person has
     consented to sexual intercourse, that belief must be formed under
6    circumstances society will tolerate as reasonable in order for the
     defendant to have adduced substantial evidence giving rise to a
7    Mayberry instruction. [Citations.]

8

9    Williams, 4 Cal. 4th at 360-361,(footnotes omitted.)  Thus, to assess whether the

10   instruction is required, the court must determine whether there is substantial evidence

11   that the defendant honestly and reasonably, but mistakenly, believed that the victim

12   consented to the sexual act.  Id. at 361.

13         Here, as the state appellate court concluded, there was insufficient evidence

14   to support the Mayberry instruction because there was no middle ground from which

15   Vitale could have argued that he reasonably misinterpreted either victim's conduct.

16   The state court's conclusion was also reasonable.  28 U.S.C. § 2254(d)(1).

17         Vitale defended his case on the basis of actual consent and not on any

18   mistaken belief in consent based on equivocal conduct by the victims  While it is true

19   both victims were prostitutes, evidence presented demonstrates there was no

20   equivocal conduct on the two victims part.

21         Victim Victoria S. initially agreed to perform sexual services for a certain

22   price. (Lodgment 1, 1 RT 38, 41.)  However, after Vitale said he wanted to hit her

23   with a paddle, she stated she did not want to be with him and attempted to get out of

24   his car.  (Lodgment 1, 1 RT 39, 42-43.)  Once they arrived at Vitale's condo, he

25   threatened to hurt her if she failed to call him "pedophile."  (Lodgment 1, 1 RT 48,

26   51, 60.)  He then grabbed her by the neck and forced her into the condo.  (Lodgment

27   1, 1 RT 48.)  When Vitale began urinating in her mouth, Victoria S. told Vitale she

28   could not handle it.  (Lodgment 1, 1 RT 48, 54.)  Vitale choked the victim, and

08-0331 JLS (WMc)

1   "rammed" her head as he forced her to orally copulate him, causing her to vomit.

2   (Lodgment 1, 1 RT 49, 54-55.)  Later, Vitale pulled her by the hair into his bedroom

3   where he hit her with a paddle against her will.  (Lodgment 1, 1 RT 49, 56-57, 60.)

4   Victoria S. testified all acts of intercourse and oral copulation were against her will.

5   (Lodgment 1, 1 RT 60.)  Further, she testified in detail about her tremendous fear

6   throughout the ordeal.  (See Lodgment 1, 1 RT 42, 44-45, 48, 60, 66, 76.)

7        Margaret W. testified she agreed to allow Vitale to spank her, but never

8   agreed to perform any sexual acts.  (Lodgment 1, 3 RT 140, 149.)  Further, at Vitale's

9   condo, after he told her he was a police officer, she began to cry.  (Lodgment 1, 3 RT

10   141-143.)   As she performed sexual acts on Vitale she cried the entire time.

11   (Lodgment 1, 3 RT 144, 146-148.)  While Vitale orally copulated her, Margaret W.

12   cried.  (Lodgment 1, 3 RT 144, 147-148.)  Likewise, Margaret W. testified about her

13   tremendous fear which resulted in her submission to appellant's acts.  (Lodgment 1,

14   See 3 RT 143-144, 147.)

15        Under no possible circumstances can these acts of threatening someone, and

16   physically forcing them into one's condo lead to the reasonable conclusion that the

17   sex was consensual.  Moreover, again, under no possible circumstances could one

18   conclude Margaret W. who began crying when appellant said he was a vice officer,

19   and continued to cry throughout the sexual acts, was consenting to appellant's

20   conduct.  Moreover, a reasonable person would not believe that a "consent" obtained

21   by force, duress and threats was freely and voluntarily obtained.  While both girls

22   may have initially consented to certain acts, including riding in appellant's vehicle,

23   they made it clear by their subsequent actions they were not consenting to appellant's

24   later conduct.  There was simply no equivocal act either victims' part.  The state

25   court's decision is unassailable as to state law.  Bradshaw v. Richey, 566 U.S. 74.

26        This case is distinguishable form Bradley v. Duncan, 315 F.3d 1091 (9th Cir.

27   2002) cited by petitioner.  (Pet. at 19.)  There, at Bradley's first trial, the state court

28   provided the jury with instructions regarding the defense of entrapment pursuant to

08-0331 JLS (WMc)

1    the defense's request. Following a mistrial, Bradley was retried before another state

2    court judge. At the close of evidence, the defense again requested an entrapment

3    instruction.   This time, the trial court denied the request without explanation.

4    Bradley, 315 F.3d at 1094.

5          On habeas review, the United States Court of Appeal for the Ninth Circuit

6    found that the California Court of Appeal's decision that Bradley was not entitled to

7    an entrapment instruction under California law involved "an unreasonable

8    determination of the facts in light of the evidence presented," noting that the evidence

9    presented at the second trial was exactly the same as the first trial, yet the second trial

10   judge refused to give the entrapment instruction. Id. at 1096-1098. The Ninth Circuit

11   concluded the failure to instruct the jury on entrapment deprived Bradley of his due

12   process right to present a full defense. Id at 1098.

13         Here, there was nothing to suggest Vitale had a reasonable, honest, but

14   mistaken belief that the victims consented to sexual intercourse; rather, the argument

15   was that the victims consented to sexual intercourse Vitale purchased. As a result,

16   there was no middle ground from which appellant could argue he reasonably

17   misinterpreted the conduct of the two young girls. Williams, 4 Cal. 4th at p. 362.

18   Accordingly, as the Court of Appeal held, there was absolutely no basis under state

19   law for the giving of CALJIC No. 10.65. (Lodgment 9 at 17-18.) Because the state

20   trial court properly concluded Vitale had no right to a Mayberry instruction, Vitale

21   was not deprived of his due process right to present a defense.

22         Even assuming, arguendo, there was instructional error, it did not have a

23   substantial and injurious effect on the jury's verdict. There was overwhelming and

24   virtually undisputed evidence that the victims both submitted to the Vitale's actions

25   only because Vitale threatened them and because they were afraid for their lives.

26   Vitale did not present any evidence to counter the victim's testimony in this regard.

27   Based on the foregoing, it is evident that any error was harmless under the Brecht

28   standard.

08-0331 JLS (WMc)

IV.

**CLAIM THREE HAS FAILS TO STATE A FEDERAL CONSTITUTIONAL QUESTION; CLAIM THREE ALSO FAILS ON THE MERITS**

In Claim Three, Vitale contends the trial court erred in admitting evidence that he sexually assaulted a Thai prostitute, pursuant to California Evidence Code section 1108. (Pet. at 19-25.) This claim was addressed by the California Court of Appeal on direct appeal and was raised in his petition for review to the California Supreme Court. (Lodgments 9, 12.) The claim fails both procedurally and on the merits.

**A. Background**

In his direct appeal, Vitale claimed the trial court erred by admitting, under California Evidence Code section 1108, a video tape of appellant engaged in sex acts with a prostitute in Thailand. (Lodgment 3, pp. 29-44.) He asserted the tape was inadmissible because it did not meet the criteria of section 1108; California Evidence Code section 1108 violate due process; and the admission of the tape violated his Sixth and Fourteenth Amendment right of confrontation. The California Court of Appeal considered these arguments and rejected them:

> [Petitioner] argues because the prosecution did not offer the testimony of the woman in the videotape, he was denied his right under the Sixth and Fourteenth Amendments to the United States Constitution to confront the witnesses against him. The right of confrontation does not apply to non-testimonial evidence. ([People v. Johnson 121 Cal.App.4th 1409, 1411-1413 (2004); People v. Purcell, 22 Cal.App.2d 126, 131 (1937)].) The videotape was non-testimonial and playing it did not deny appellant his right of confrontation.
>
> [Petitioner] argues the admission of evidence pursuant to Evidence Code section 1108 denied him due process in that it admits highly prejudicial evidence and reduces the prosecution burden of proof. Our Supreme Court has held the section does not have these effects and does not deny due process. ([People v. Falsetta, 21 Cal.4th 903, 916-922 (1999)].)

(Lodgment 9 at 24.)

08-0331 JLS (WMc)

1    The Court of Appeal further held that admission of the tape did not prejudice

2  appellant as it was not so shocking or probative that it could be said to be reasonably

3  probable that without it, a result more favorable to Vitale might have occurred.

4  (Lodgment 9 at 25.)

5  **B.    Vitale fails to State a Claim Which is Cognizable on Federal Habeas
      Corpus**

6

7    Federal habeas corpus is available only on behalf of a person in custody in

8  violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §

9  2254(a); Estelle v. McGuire, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385

10  (1991); Engle v. Isaac, 456 U.S. 107, 119, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982).

11  A violation of state law standing alone is not cognizable in federal court on habeas.

12  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Jammal v. Van de Kamp,

13  926 F.2d 918, 919 (9th Cir. 1991). Moreover, a habeas petitioner may not transform

14  a state-law issue into a federal one merely by asserting a violation of due process.

15  Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).

16    State evidentiary rulings are not cognizable in a federal habeas proceeding,

17  unless the admission of the evidence violated the petitioner's due process right to a

18  fair trial. Estelle, 502 U.S. at 68; Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir.

19  1999); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990). In order to prevail, the

20  petitioner must show that the court's ruling was so prejudicial that it rendered his trial

21  fundamentally unfair. See Estelle, 502 U.S. at 68; Jammal, 926 F.2d at 920.

22    Here, Vitale's claim regarding whether the video tape was properly admitted

23  pursuant to California Evidence Code section 1108 presents only state law issues.

24  Accordingly, this contention fails to state a claim which is cognizable on federal

25  habeas corpus.

26    Furthermore, Federal Rule of Evidence 413(a) permits the consideration of

27  a prior sexual assault "for its bearing on any matter to which it is relevant." The

28  legislative history reveals that by "any matter to which it is relevant" Congress

08-0331 JLS (WMc)

1  intended to include the defendant's propensity to engage in the same conduct of

2  sexual assault with which he has been charged.    (See 137 Cong. Rec. 6032

3  (section-by-section analysis of Comprehensive Violent Crime Control Act of 1991,

4  in which adoption of Rules 413-415 was initially proposed); 140 Cong. Rec. 23603

5  (1994) (statement of Rep. Molinari); see United States v. Sioux, 362 F.3d 1241, 1244

6  (9th Cir. 2004).)    "The courts should *liberally construe the rules* so that the

7  defendant's propensities, as well as questions of probability in light of the defendant's

8  past conduct, can be properly assessed." 140 Cong. Rec. S12990 (statement of Rep.

9  Dole), emphasis added. "Rule 413 . . . favors the introduction of evidence." United

10  States v. Guardia, 135 F.3d 1326, 1331 (10th Cir. 1998); See 140 Cong.  Rec.

11  H8968-01, H8991 (Aug. 21, 1994) (statement of S. Molinari) ["The presumption is

12  in favor of admission."].

13      In any event, conduct falling within the definition of "sexual offense" set

14  forth in Evidence Code section 1108, subdivision (d)(1), is equally probative of a

15  propensity to commit a sexual offense, whether it occurs inside or outside of the

16  United States. This is true without regard to the status of such conduct under foreign

17  law, as its probative value stems from the *nature of the conduct*, not from its

18  illegality. Whether the conduct occurred in a foreign jurisdiction should be irrelevant

19  to the determination of whether such conduct demonstrates a defendant's propensity

20  to commit sexual offenses.

21      Precluding admission of evidence of an uncharged sexual offense because

22  it was not committed in a state of the United States or in a federal jurisdiction would

23  be contrary to the apparent intent of the Legislature in excepting sexual offense

24  propensity evidence from exclusion under Evidence Code section 1101.

25      Vitale's claim that California Evidence Code section 1108 violates due

26  process also fails.  The California Court of Appeal rejected Vitale's argument in this

27  regard on the grounds that this issue had been decided adversely to petitioner by the

28  California Supreme Court in People v. Falsetta, 21 Cal. 4th 903 (1999). (Lodgment

08-0331 JLS (WMc)

1  9 at 24.)  The California Court properly applied state law.  See Estelle v. McGuire,

2  502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (a federal habeas court

3  cannot reexamine a state court's interpretation and application of state law).

4          The United States Supreme Court "has never expressly held that it violates

5  due process to admit other crimes evidence for the purpose of showing conduct in

6  conformity therewith, or that it violates due process to admit other crimes evidence

7  for other purposes without an instruction limiting the jury's consideration of the

8  evidence to such purposes."  Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir.

9  2001), overruled on other grounds by Woodford v. Garceau, 538 U.S. 202, 123 S. Ct.

10 1398, 155 L. Ed. 2d 363 (2003).  In fact, the Supreme Court has expressly left open

11 this question.  See Estelle v. McGuire, 502 U.S. at 75 n.5 ("Because we need not

12 reach the issue, we express no opinion on whether a state law would violate the Due

13 Process Clause if it permitted the use of 'prior crimes' evidence to show propensity

14 to commit a charged crime").  Accordingly, it is not clearly established federal law

15 that the admission of propensity evidence violates due process.  Vitale has therefore

16 failed to demonstrate that the California Courts' rejection of his federal due process

17 claim was contrary to or an unreasonable application of clearly established federal

18 law.  28 U.S.C. § 2254(d)(1); Carey v. Musladin, 127 S. Ct. at p. 653; see also

19 Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th Cir. 2006) (denying the petitioner's

20 claim that the introduction of propensity evidence violated his due process rights

21 under the Fourteenth Amendment because "the right [petitioner] asserts has not been

22 clearly established by the Supreme Court, as required by AEDPA"); Holgerson v.

23 Knowles, 309 F.3d 1200, 1202 (9th Cir. 2002) (habeas relief not warranted unless due

24 process violation was "clearly established" under federal law); Alvarado v. Hill, 252

25 F.3d 1066, 1068-69 (9th Cir. 2001) (same).  Accordingly, Vitale is not entitled to

26 relief on his due process claim.

27          Lastly, the California Court's determination rejection of Vitale's

28 confrontation clause claim was not contrary to or an unreasonable application of

08-0331 JLS (WMc)

1  clearly established federal law.  The confrontation clause provides: "In all criminal

2  prosecutions, the accused shall enjoy the right … to be confronted with the witnesses

3  against him." U.S. Const., 6th Amend. However, the Sixth Amendment is not

4  implicated by the admission of nonhearsay statements. <u>Crawford v. Washington</u>, 541

5  U.S. 36, 68, 124 S. Ct. 475, 116 L. Ed. 2d 385 (2004); <u>People v. Combs</u>, 34 Cal. 4th

6  821, 842–843 (2004).  As the Court of Appeal properly concluded, the tape did not

7  contain testimonial statements being offered for the truth of the matter.  (Lodgment

8  9 at 24.)

9         Even assuming, arguendo, the tape was admitted in error, it did not have a

10  substantial and injurious effect on the jury's verdict.  There was overwhelming and

11  virtually undisputed evidence that the victims both submitted to the Vitale's actions

12  only because Vitale threatened them and because they were afraid for their lives.

13  Vitale did not present any evidence to counter the victim's testimony in this regard.

14  Based on the foregoing, it is evident that any error was harmless under the <u>Brecht</u>

15  standard.

16         The California Court of Appeal's rejection of Vitale's claim was not contrary

17  to or an unreasonable application of clearly established federal law.  Vitale is not

18  entitled to federal habeas relief.

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

08-0331 JLS (WMc)

# CONCLUSION

For the foregoing reasons, the Petition should be denied with prejudice. No evidentiary hearing is necessary, as all of Vitale's claims are based on the state court record which is before this Court. Respondent respectfully requests this Court deny any request for a certificate of appealability, for Vitale has not raised any claims of merit.

Dated:  April 15, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

GARY W. SCHONS
Senior Assistant Attorney General

MATTHEW MULFORD
Deputy Attorney General

s/Andrew Mestman

ANDREW MESTMAN
Deputy Attorney General

Attorneys for Respondent

AM:adc
80226588.wpd
SD2008700174

1

## <u>CERTIFICATE OF SERVICE BY U.S. MAIL</u>

2

3  Case Name: **Vitale v. Tilton**

4  No.:   **08-0331 JLS (WMc)**

5  I declare:

6  I am employed in the Office of the Attorney General, which is the office of a
member of the California State Bar, at which member's direction this service is
7  made. I am 18 years of age or older and not a party to this matter. I am familiar
with the business practice at the Office of the Attorney General for collection and
8  processing of correspondence for mailing with the United States Postal Service.
In accordance with that practice, correspondence placed in the internal mail
9  collection system at the Office of the Attorney General is deposited with the
United States Postal Service that same day in the ordinary course of business.

10
On <u>April 15, 2008</u>, I served the following documents:

11
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
12  **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

13  by placing a true copy thereof enclosed in a sealed envelope with postage thereon
fully prepaid, in the internal mail collection system at the Office of the Attorney
14  General at 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA
92186-5266, addressed as follows:

15
**Electronic Mail Notice List**
16  I have caused the above-mentioned document(s) to be electronically served on the
following person(s), who are currently on the list to receive e-mail notices for this
17  case: n/a

18  **Manual Notice List**
The following are those who are **not** on the list to receive e-mail notices for this
19  case (who therefore require manual noticing):

20  Patrick Morgan Ford
Attorney at Law
21  1901 First Avenue, Suite 400
San Diego, CA 92101
22  (Attorney for Petitioner)

23  I declare under penalty of perjury under the laws of the State of California the
foregoing is true and correct and that this declaration was executed on April 15,
24  2008, at San Diego, California.

25          A. Curiel

26  _____          _____
          Declarant                          Signature

27  SD2008700174
80227375.wpd
28