PATRICK MORGAN FORD
Law Office of Patrick Morgan Ford
1901 First Avenue, Suite 400
San Diego, CA 92101

SBN 114398
619 236-0679

Attorney for Petitioner
ANTONIO MICHAEL VITALE



UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| ANTONIO MICHAEL VITALE, | Case No. 08-0331-JLS (WMc) |
|---|---|
| Petitioner, | **TRAVERSE TO ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (28 USC 2254)** |
| vs. | |
| JAMES TILTON, Secretary, California Department of Corrections and Rehabilitation, | |
| Respondent. | |

### Introduction

Petitioner, Antonio Michael Vitale, has, by and through his retained counsel, Patrick Morgan Ford, filed with this court a Petition for Writ of Habeas Corpus by a Person in State Custody, pursuant to 28 USC 2254.

Petitioner, having been convicted in the San Diego County Superior Court of several counts of sexual assault and one count of drug possession, was sentenced to an indeterminate state prison term of 42 years-to-life. Petitioner alleges his conviction and imprisonment contravenes the Due Process Clause of the Fourteenth Amendment and asserts three errors of constitutional magnitude.

The court ordered respondent to file an answer, and it has done so. Petitioner here traverses the answer.

//



**Topical Index**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Argument

I.    There was insufficient evidence as to a lack of consent to sustain the convictions for forcible rape and forcible oral copulation as to either of the prostitute victims. . . . . . . . . . . . . . . . . . . . 1

II.    The trial court denied petitioner due process of law and deprived him of a fair trial by refusing the defense request to give an instruction under *People v. Mayberry* regarding a defendant's mistaken, but good faith belief that the complainants consented to the sexual acts. . . . . . . . . . . . . . . . . . . . . . . . 7

III.    The trial court denied petitioner a fair trial by admitting an irrelevant and highly inflammatory video tape of appellant engaging in consensual sexual conduct with a prostitute in Thailand. . . . . . . . . . . . . . . . . . . . . . . . . . 9

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Declaration of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**Table of Authorities**

Cases (Federal courts)

*Carriger v. Lewis*
  (9th Cir. 1992) 971 F.2d 329 .................................................. 9

*Duncan v. Lousiana*
  (1968) 391 U.S. 145 .......................................................... 7

*Estelle v. McGuire*
  (1983) 502 U.S. 72 ........................................................... 9

*In re Winship*
  (1970) 397 U.S. 358 .......................................................... 6

*Jackson v. Virginia*
  (1979) 443 U.S. 307 ......................................................... 1,6

*McKinney v. Rees*
  (9th Cir. 1993) 993 F.2d 1378 ................................................ 13

Cases (State courts)

*In re John Z.*
  (2003) 29 Cal.4th 756 ........................................................ 4

*In re Jose P.*
  (2005) 131 Cal.App.4th 110 ................................................... 5

*In re Romero*
  (1995) 33 Cal.App.4th 1838 ................................................... 9

*People v. Babbitt*
  (19988) 45 Caqll.3d 660 ...................................................... 11

*People v. Barton*
  (1995) 12 Cal.4th 186 ........................................................ 7

*People v. Branch*
  (2001) 91 Cal.App.4th 274 .................................................... 10

*People v. Carmen*
  (1959) 36 Cal.2d 768 ......................................................... 8

*People v. Castillo*
  (2987) 193 Cal.App.3d 125 .................................................... 8

*People v. Falsetta*
  (1999) 21 Cal.4th 903

*People v. Garceau*
     (1993) 6 Cal.4th 140 .................................................... 9

*People v. Johnson*
     (1980) 26 Cal.3d 557 .................................................... 1

*People v. Kipp*
     (1998) 18 nCal.4th 349 .................................................. 12

*People v. Kitt*
     (1978) 83 Cal.App.3d 834 ................................................ 11

*People v. Mayberry*
     (1975) 15 Cal.3d 143 .................................................... 7

*People v. Roundtree*
     (2000) 77 Cal.App.4th 846 ............................................... 4

*People v. St. Martin*
     (1970) 1 Cal.3d 524 ..................................................... 7

*People v. Wickersham*
     (1982) 32 Cal.3d 307 .................................................... 7

*People v. Wright*
     (1988) 45 Cal.3d 112 ....................................................

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO MICHAEL VITALE,<br><br>  Petitioner,<br><br>vs.<br><br>JAMES TILTON, Secretary, California Department of Corrections and Rehabilitation,<br><br>  Respondent. | Case No.08-331 JLS (WMc)<br><br>**TRAVERSE TO ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY (28 USC 2254)** |

Each allegation set forth in the petition is realleged here.

### Argument

### I

**There was insufficient evidence as to a lack of consent to sustain the convictions for forcible rape and forcible oral copulation as to either victim.**

Petitioner was convicted of three counts of forcible rape and four counts of forcible oral copulation. The jury found petitioner not guilty of the kidnapping for rape count, and rejected kidnap enhancement allegations.

The sole issue in this case was whether the prostitutes consented to the sexual intercourse and oral copulation. The two incidents have been described in detail in the Statement of Facts contained in the petition, and repeated in the answer.

The Due Process clause of the Fourteenth Amendment requires that a conviction be supported by substantial evidence. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Johnson* (1980) 26 Cal.3d 557, 576.)

Penal Code section 261 states:

> (a) Rape is an act of sexual intercourse accomplished with a person not the spouse of perpetrator, under any of the following

1

circumstances:

* * *

(2) Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person of another.

Penal Code section 288a holds:

(a) Oral copulation is the act of copulating the mouth of one person with the sexual organ or anus of another person.

* * *

(c)(2) Any person who commits an act of oral copulation when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years.

"Consent," in relation to sex offenses, is defined as "positive cooperation in an act or attitude as an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved." (CALJIC No. 1.23.1; Penal Code section 261.6)

Petitioner detailed the evidence and his argument of insufficiency in his petition and the accompanying memorandum. Respondent merely recites the evidence presented in the trial court and claims this was sufficient to sustain the convictions.

It was not.

At no time did Victoria S. testify that she unequivocally told petitioner she did not want to perform the sexual acts she had previously agreed to be paid for. There was no force, and no violence used against her that was not connected to the the sex acts.

She freely admitted that, at the time she was approached by petitioner, she was working as a prostitute, selling sex for money. She entered his car she asked if he was a police officer, and when he denied this, she had him expose his penis so that she could touch it. Petitioner told her he wanted oral sex, intercourse, and to spank her. She agreed to perform these acts. They agreed on a price and she agreed to go with petitioner. Once inside his apartment he told her to "suck his dick," and she willingly did. She had removed her own clothes by then. It is clear that all the acts were consensual up until this

2

time.

While orally copulating petitioner, she tasted urine. She told petitioner she could not handle that and he stopped, then pushed her on the floor and penetrated her. When he "pulled out" of her and urinated on her she began to vomit. He told her, "Good girl. I"ll pay you more." He placed her on the bed and twice spanked her buttocks with a paddle. After placing her in a shower, he took her back to the living room and had intercourse with her in different positions.

*Nowhere in her testimony did she ever indicate that she told petitioner to stop, either during intercourse or oral copulation.* She never stated that she resisted or otherwise communicated to petitioner that she was withdrawing her consent. Other than spanking her with a paddle as previously agreed upon, petitioner never struck her or used any force, violence or threats.

Instead, she claimed that after the paddling, the sex acts were "against her will" in that she no longer wanted to be there, *but never said or did anything to communicate this to petitioner.*

The real problem with Victoria S. is that she was never paid.

M.W. also admitted that she was a working prostitute on May 23, 2003, when she encountered petitioner on El Cajon Boulevard. Petitioner offered her $300 to spank him with a paddle. She agreed to do this and willingly accompanied petitioner. While she only expressly agreed to the paddling, she conceded that she "assumed" she would also be having sex with petitioner for the $300.

Once inside petitioner's apartment, he told her he was a vice cop and she had to do as he said, or he would take her to jail. While this upset M.W., she quickly realized that petitioner was not a police officer. Instead, she complied with petitioner's requests because of "a look on his face." She removed her own shirt and orally copulated petitioner. She willingly removed her clothes. He had her lay on the floor and told her he was going to ejaculate on her chest. Petitioner then orally copulated her, engaged in intercourse, and ejaculated on her body.

3

1   She never resisted or told petitioner that she wanted to leave, and petitioner never
2   threatened her or used any type of violence.  Instead, while they were having sex,
3   petitioner "treated her like she was his girlfriend."  She testified that she "may have," at
4   some point, told petitioner that she no longer wanted to have sex, but could not be sure of
5   this.
6   After the sex acts were completed, she walked out of the apartment, ran through the
7   garage and across the street, where she encountered some people in a van and told them
8   she had been raped.  She refused to call the police and instead telephoned her pimp.
9   When the police arrived she lied to them, gave them a false name and told them she had
10  been in Mission Valley where she was forcibly kidnapped by petitioner, taken to his
11  apartment and raped.
12  Both prostitutes willingly agreed to accompany petitioner to his apartment and
13  engage in various sex acts in exchange for money.  That is what prostitutes do.  There is
14  little doubt that had petitioner paid each woman, as agreed, no complaint would ever had
15  been made to police.
16  Petitioner acknowledges that it is possible for a woman, even a prostitute to consent
17  to sex, and then, at some point, withdraw that consent.  In California, if the man fails to
18  comply with the woman's request to stop, he is then guilty of forcible rape, oral copulation
19  or another act.  (*In re John Z.* (2003) 29 Cal.4th 756, 760; *People v. Roundtree* (2000) 77
20  Cal.App.4th 846, 850.)
21  In both *In re John Z.* and *People v. Roundtree,* the victims made very clear to the
22  defendants that they wanted to stop the intercourse.  (*In re John Z.*, 29 Cal.4th at 758;
23  *Roundtree,* 77 Cal.App.4th at 848.)  That is *not* the case here as to either alleged victim.
24  V.S. testified that the sex acts committed after the consensual paddling were "against her
25  will," but she never communicated this to petitioner by word or deed.  Likewise, M.W. at
26  first started "sobbing mildly" after petitioner told her he was a vice officer, but then
27  admitted she quickly discounted petitioner's claim, and engaged in various sex acts
28  without resistance or any indication to petitioner that she wanted to stop or leave.  Even if

4

1  M.W. had engaged in sex with petitioner based on his claim that he was a police officer
2  who would otherwise arrest her, this does not constitute forcible rape unless she had a
3  "reasonable belief that the perpetrator is a public official." (Penal Code section 261 subd.
4  (7).) M.W. specifically testified that she immediately disbelieved petitioner's claim that
5  he was a police officer who would arrest her.

6        Consent, once given, cannot be withdrawn if the "withdrawal" takes place only in
7  the mind of the woman engaging in sex. There *must* be something more than "a look" on
8  the man's face, or some other vague and ambiguous claim regarding the withdrawal of
9  consent. A conviction for forcible rape cannot be sustained without evidence that the
10 defendant threatened bodily harm, or said or did *something* to induce reasonable fear in
11 the victim. Moreover, the victim must convey her fear to the defendant (*People v. Young*
12 (1987) 190 Cal.App.3d 248.) In *Young*, the court noted that:

> Although resistance is no longer the touchstone of the element of force, the reviewing court still looks to the circumstances of the case, including the presence of verbal or nonverbal threats, or the kind of force that might reasonably induce fear in the mind of the victim, to ascertain sufficiency of the evidence of a conviction under section 261, subdivision (2). (See *People v. Bermudez* (1984) 157 Cal.App.3d 619, 624.; *People v. Hunt, supra.,* 72 Cal.App.3d at p. 194; cf. *People v. Bradbury* (1907) 151 Cal. 675, 677 ....) Additionally, the complainant's conduct must be measured against the degree of force manifested or in light of whether her fears were genuine and reasonably grounded.

18 (*Id.* at 256.)
19

20       A court addressed the issue of the withdrawal of consent in *In re Jose*
21 *P.* (2005) 131 Cal.App.4th 110. In that case, the court found that, even though the victim
22 willingly engaged in foreplay, there was sufficient evidence that she later withdrew her
23 consent to any further sexual activity, and thereafter affirmed the forcible rape conviction.
24 The court noted that the victim "made it clear to petitioner, repeatedly and prior to
25 penetration, both that she did not want to be penetrated and that petitioner's efforts were
26 both against her will and physically painful to her."( *Id.* at 117.) That case logically
27 describes the parameters for the withdrawal of consent, and strengthens petitioner's
28 argument in the present case.

Where a prostitute voluntarily agrees to engage in sex acts for money, then later claims her will was overcome and the acts therefore "became" involuntary, the law must demand that there be *some* evidence of a clear, unambiguous indication to the customer that she demanded he stop and he refused to do so. *Neither V.S. nor M.W. made any such demand to petitioner,* and respondent cannot avoid that undisputed fact.

The record shows the prostitutes agreed to have intercourse and oral copulation. While some of the other acts were unpleasant, there was no evidence that the women withdrew their consent – certainly not as to the intercourse and oral copulation, of which petitioner was convicted.

Based on the Fourteenth Amendment, a federal habeas corpus court must consider not whether there is *any* evidence to support a state-court conviction, but whether there was sufficient evidence to satisfy a rational trier of fact to find guilt beyond a reasonable doubt. (*Jackson v. Virginia, supra,* 443 U.S. 307, 313-316, citing *In re Winship*, 397 U.S. 358 (1970).) Applying that standard to the sexual assault charges of which petitioner was convicted, it is clear those charges are *not* supported by sufficient evidence that the prostitutes at some point during the sexual activities withdrew their prior to consent to engage in this conduct for pay, and informed petitioner of their desire to cancel their contracts.

The state courts failed to apply the proper standard in a reasonable manner. Respondent's answer does nothing to show otherwise. Habeas corpus relief must be granted.

//

## II

**The trial court denied petitioner due process of law and deprived him of a fair trial by refusing the defense request to give an instruction under *People v. Mayberry* regarding a defendant's mistaken, but good faith belief that the complainants consented to the sexual acts.**

Based upon the ambiguous testimony of both prostitutes regarding their alleged withdrawal of consent, and petitioner's statements in his telephone interview with the detective that they consented to all the sexual acts he performed, the defense requested that the court give the so-called *Mayberry* instruction found in CALJIC No. 10.65. The court refused to give the instruction, mis-citing the testimony of the prostitutes by stating that each of them had indicated they became fearful and withdrew their consent to any further sex acts.

"It is well-settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. The general principles of law governing a case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." (*People v. St. Martin* (1970) 1 Cal.3d 524, 531.) The requirement of *sua sponte* instructions arises from the defendant's constitutional right (under the Sixth and Fourteenth Amendments) to have the jury determine every material issue presented by the evidence, as well as the jury's "truth acertainment function." (*People v. Wickersham* (1982) 32 Cal.3d 307, 335; *People v. Barton* (1995) 12 Cal.4th 186, 196; see also *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).)

In *People v. Mayberry* (1975) 15 Cal.3d 143, the California Supreme Court held that there is no rape if a defendant maintains a reasonable, although mistaken belief that a prosecutrix voluntarily consented to engage in sex. (*Id.* at 156.) Accordingly, the jury must be so instructed where there is evidence that may raise a reasonable doubt as to whether the defendant believed the complaining witness consented to the sex acts charged. (*Id.* at 157.)

A defendant is entitled to instructions, upon request that highlight his theory of the

case as long as the requested instruction addresses a legal point rather than specific facts, and is not argumentative or duplicative of other instructions. (*People v. Wright* (1988) 45 Cal.3d 1126, 1135.) If the evidence warrants it, CALJIC No. 10.65 must be given *sua sponte*. (*People v. Castillo* (1987) 193 Cal.App.3d 125-126.)

In *People v. Flannel* (1979) 25 Cal.3d 668, the court, commenting on the duty to provide requested instructions, found the trial court should instruct the jury on "every material question upon which there is *any evidence* deserving of any consideration whatever." (*Id.* at 684, quoting *People v. Carmen* (1959) 36 Cal.2d 768, 773 (emphasis added).) "The fact that evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. That is a question within the exclusive province of the jury." (*Ibid.*)

If the defendant proffers enough evidence to deserve consideration by the jury, i.e., evidence from which reasonable jurors could have concluded the substance of the instructions is true, the court must so instruct. (*Ibid.*) "A trial court should not, however, measure the substantiality of the evidence by undertaking to weigh the credibility of the witness, a task exclusively relegated to the jury." (*Ibid.*) Moreover, doubts as to the sufficiency of the evidence to warrant requested instructions should be resolved in favor of the accused. (*Id.* at 685.)

Petitioner and respondent do not disagree on the state of law. Rather, respondent asserts that the instruction was properly denied because the prostitutes were unequivocal in their withdrawal of consent. This allegation is belied by the evidence. Neither prostitute ever stated that she told or otherwise indicated to petitioner she was no longer willing to perform the agreed upon acts for pay. This, coupled with petitioner's tape-recorded statement to a detective wherein he claimed the acts were consensual, entitled petitioner to the requested instruction.

Using circular logic, respondent emphasizes that trial counsel's argument was limited to a claim of actual consent, not a good-faith but mistaken belief of consent on the part of petitioner. However, this limitation was clearly occasioned by the fact that the court

8

1  had already denied the instruction on which this argument could be based.

2      Consent, whether actual or mistaken, was the centerpiece of this case. The trial
3  court's refusal to issue the requested instruction so infected the trial as to deny petitioner a
4  fair trial and due process of law. (*Estelle v. McGuire,* 502 U.S. 62, 75; *Carriger v. Lewis,*
5  971 F.2d 329, 334 (9th Cir. 1992) (en banc).)

### III

### The trial court denied petitioner a fair trial by admitting a irrelevant and highly inflammatory video tape of petitioner engaged in consensual sexual conduct with a prostitute in Thailand.

11      Police searched petitioner's residence on February 10, 2004, and seized a video
12 tape which depicted petitioner engaging in various sexual activities with a young Asian
13 woman – perhaps in her early twenties, presumably a Thai prostitute. It is graphic and
14 many of the acts shocking. Petitioner's passport reflected that he had traveled to Thailand
15 from the middle of December, 2003, to the middle of January, 2004. Over defense
16 objection, the tape (designated as People's Exhibit 20), and a Thai-to-English transcript
17 were admitted under Evidence Code section 1108.

18     Petitioner contends that the tape was inadmissible under the Due Process clause of
19 the Fourteenth Amendment.

20     Petitioner objected to the admission of the tape as being highly inflammatory and
21 not meeting the requirements of either Evidence Code section 1101 or 1108. The
22 objections were overruled.

23     In California, for evidence to be admissible, it must be relevant to some issue in
24 dispute. (Evidence Code sections 210, 350; *People v. Garceau* (1993) 6 Cal.4th 140, 177;
25 *In re Romero C.* (1995) 33 Cal.App.4th 1838, 1843.)

26     Even relevant evidence may be excluded for policy or constitutional reasons, such
27 as hearsay, undue prejudice or foundational requirements. (Evidence Code section 351.)

28     In a criminal action in which the defendant is charged with a sex offense, evidence

1  of a defendant's commission of another sex offense, even if never charged, may be
2  admissible in order to show the defendant's propensity to commit a similar act. (Evidence
3  Code section 1108, subd. (a).)
4      Admission of evidence in a state court trial violates due process where it renders the
5  trial fundamentally unfair. (*Estelle v. McGuire, supra,* 502 U.S. 62.)
6      The court found that the video tape was admissible under Evidence Code section
7  1108 "for the purpose of consent and modus operandi and the ability of the jury to
8  evaluate the testimony of the complaining witnesses . . ." The court later ruled that "fear"
9  was the "common thread" which linked the acts in the Thai video to those charged. (RT
10 260.)
11     Initially, the evidence was inadmissible as it did not meet the criteria of section
12 1108, which holds that in a prosecution for a sexual offense, evidence of the defendant's
13 commission of another sexual offense is not made inadmissible by Evidence Code section
14 1101. (Evidence Code section 1108, subd. (a).) A "'sexual offense' means a crime under
15 the law of a state or of the United States that involved any of the following . . ." (Section
16 1108 subd. (d)(1).) Subdivision (d)(1)(A) sets forth various sex offense Penal Code
17 sections, including forcible rape and forcible oral copulation.
18     The video tape admitted in this case depicts petitioner engaged in sexual activities
19 with a prostitute in Thailand. The prosecution presented no evidence that prostitution is
20 unlawful in Thailand. In fact, legal prostitution is the reason many people visit Thailand.
21 Moreover, section 1108 subd. (d)(1)(A) sets forth the sex offenses which may serve as the
22 basis for admissibility, yet the prostitution statute in California, Penal Code section 647
23 subd. (b), is not included. Petitioner's prior "offense" did not fall within the purview of
24 section 1108 and should not have been admitted. (*Cf. People v. Branch* (2001) 91
25 Cal.App.4th 274, 280 [both the prior uncharged offense and current offense were those
26 listed in section 1108 subd.(d)(1)(A)].)
27     Furthermore, the jury received no instruction that it should make such a
28 determination as to consent, prior to utilizing this evidence under section 1108. Any

argument that the tape was admissible under this subsection is therefore forfeited as involving factual issues not resolved below.

Next, the court stated that it was admitting this evidence under section 1108 on the issues of consent and modus operandi. However, *the tape was completely irrelevant to the issue of consent*. The court focused its analysis on the fact that petitioner had slapped the woman in the video. Again, we have no evidence that this was not part of the arrangement between petitioner and the prostitute, and therefore consensual. Noteworthy here is that the alleged victim, V.S., indicated that in addition to sex, her agreement with petitioner included being hit and having her hair pulled.

Even assuming, *arguendo*, that the slap was nonconsensual, it still has no relevance to the question of consent in the charged offenses. There was absolutely no evidence that petitioner used any type of violence or threats of violence towards the complaining witnesses in order to overcome their free will to commit the acts they performed. Any evidence of physical force demonstrated by the tape was completely irrelevant to the question of consent in the instant case. Evidence, to be admissible, must be relevant to some disputed fact. (Evidence Code section 350; *People v. Babbitt* (1988) 45 Cal.3d 660, 681.) "There is no discretion vested in a court to admit irrelevant evidence." (*People v. Kitt* (1978) 83 Cal.App.3d 834, 849.)

The admission of the tape also violated Evidence Code section 352 in that its probative value, if any, was far outweighed by the prejudicial effect on the jury of seeing petitioner slap the woman in the video while engaged in consensual sexual conduct. This section tracks a due process progress argument.

The overriding factor emphasized by the California Supreme Court in finding that Evidence Code section 1108 did not violate due process of law, was the "safeguard" that the courts would be required to first review the uncharged offense under Evidence Code section 352. (*People v. Falsetta* (1999) 21 Cal.4th 903, 917, citing *People v. Fitch* (1997) 55 Cal.App.4th 172, 183.)

Under section 352, a trial court must determine whether the probative value of the

11

proffered evidence outweighs any prejudicial effect such evidence may have on the jury. (*Ibid.*; *People v. Falsetta, supra,* 21 Cal.4th 903, 917; *People v. Hawkins, supra,* 98 Cal.App.4th 1428, 1444.)

When dealing with uncharged offenses, the probative value must be substantial and must not be outweighed by the danger that the jury will be unduly prejudiced by hearing such evidence. (*People v. Kipp* (1998) 18 Cal.4th 349, 371.)

Respondent contends that, even if admitted in error, the tape "did not have a substantial and injurious effect on the jury's verdict." (Answr, p. 20.) Nothing could be further from the truth.

The trial court stated:

> The Court: And, also, I'd like to make a record that when I saw the reaction of the victim, it was clear to me, and I don't know that a witness could take – Detective Vile or any other witness who saw that film could take an oath and say, "Well, let me tell you what I saw," because it was indescribable, the fear, the horror that was on the face of the Taiwanese [sic] girl, presumably Taiwanese [sic], whatever girl she was, but the message was clear: She was terrified, and she was shocked that she got slapped on the left side of her face by the defendant, who hit her hard.
>
> And there was a whole bunch of nonconsentual [sic], noncapitalistic [sic] behavior. It wasn't money for sex. It wasn't money for sex. If it was money for sex, you know, that's an old profession, you know practiced for a long time, you know. Money for sex doesn't bother me a bit. I don't know what the problem would be if it was money for sex. I'm not sure it would be admitted. I don't think it would. So a guy pays for sex, so what.

(RT 12.)

Earlier, the court acknowledged the highly prejudicial nature of this video:

> The Court: And there is no doubt that there is a prejudicial effect, and there is no doubt that the event on that Thai film might create an emotional response. I think it would in any sensitive person, it would.

(RT 3.)

The court nonetheless believed a jury could follow the instructions regarding the evidence. How could that possibly be so, especially given the lack of a relevant instruction?

The prosecution believed the video was not unduly prejudicial because "we saw no

12

blood; we saw no torture; we saw no weapons being used." (RT 11.) This is an absurd assertion.

The probative value of the video was marginal, at best. Moreover, the court emphasized highly inflammatory nature of the video. This is not merely an issue of state law error. Rather, the court abused its discretion in admitting this evidence to the degree that it deprived petitioner of his right to a fair trial. Such "other crimes evidence" violates due process when it is, as here, probative only of a defendant's character and criminal propensity, and when the jury could have drawn no permissible inferences from the evidence. (*McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir. 1993).)

As previously noted, the evidence supporting the rape and forcible oral copulation convictions was extremely weak. The introduction of the video undoubtedly created a highly charged atmosphere in which the jury became prejudiced against petitioner – especially because he was never "punished" for the acts depicted in the video.

The error in admitting the video tape of the incident with the Thai prostitute was prejudicial under any standard. Consent was the only disputed issue in the present case. The alleged victims plainly consented to the sex acts, and were only later angered by uncharged acts that occurred, and petitioner's alleged failure to pay for the services.

The introduction of the video undoubtedly created a highly emotional atmosphere which prejudiced the jury against petitioner – especially since he had never been "punished" for the acts depicted in the video.

This was not, as respondent would have the court believe, a mere violation of state law, at most. Instead, the evidence was of such a highly inflammatory nature – as admitted by the trial judge – that's it's admission poisoned the trial so as to render it fundamentally unfair.

Without the introduction of this poisonous evidence, it is highly likely petitioner would have obtained a more favorable outcome on the charges of rape and forced oral copulation against the prostitutes who agreed to have sex and orally copulate him, and in their testimony never suggested they told or in anyway communicated to petitioner that

they were withdrawing their consent. The error compels this court to render habeas corpus relief.

## Conclusion

Petitioner was convicted of multiple counts of rape and forcible oral copulation based upon his bringing prostitutes to his apartment. Having initially agreed to various sex acts, each later claimed at some point she no longer wanted continue, *yet neither one expressed that to petitioner*. Nonetheless the jury convicted petitioner of these counts after rejecting the testimony as to the kidnapping charge and allegations. The evidence is insufficient on the issue of consent. And this was exacerbated by the court refusing to issue an instruction regarding a defendant's mistaken but good faith belief that the other person had consented to the sex acts.

Finally, the court admitted an irrelevant, shockingly inflammatory video which had little, if any, probative value. This video undoubtedly prejudiced the jury against petitioner to the point of denying him a fair trial.

Federal habeas corpus relief is warranted, and respondent has done nothing to show otherwise.

Dated: May 23, 2008.

Respectfully submitted,

PATRICK MORGAN FORD,
Attorney for Petitioner
ANTONIO MICHAEL VITALE

*Antonio Michael Vitale v. James Tilton*  Civil No. ED CV _____
 VAP (RZ) C.A. No. _____

## DECLARATION OF SERVICE

I, Esther F. Rowe, say: I am a citizen of the United States, over 18 years of age, and employed in the County of San Diego, California, in which county the within-mentioned delivery occurred, and not a party to the subject case. My business address is 1901 First Avenue, Suite 400, San Diego, CA 92101. I served a Traverse to Answer to Petition for Writ of Habeas Corpus, of which a true and correct copy of the document filed in the case is affixed, by placing a copy thereof in a separate envelope for each addressee respectively as follows:

Hon. Barry Ted Moscowitz
United States District Court
Southern District
880 Front Street, Suite 4290
San Diego, CA 92101-8900

Antonio M. Vitale, #V75451
Yard B Bld. 3 Cell 111 L
P.O. Box 3030
Susanville, CA 96127

Andrew Mestman
Office of the Attorney General
P.O. Box 85266
San Diego, CA 92186-5266

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on May 23, 2008, at San Diego, California.

_____
Esther F. Rowe