

PATRICK MORGAN FORD
Law Office of Patrick Morgan Ford
1901 First Avenue, Suite 400
San Diego, CA 92101

SBN 114398
619 236-0679

Attorney for Petitioner
ANTONIO MICHAEL VITALE

FILED
2008 JUL 30 PM 2: 27
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO MICHAEL VITALE,<br><br>　　　　　Petitioner,<br><br>vs.<br><br>MATTHEW CATE, Secretary, California Department of Corrections and Rehabilitation,<br><br>　　　　　Respondent. | Case No. 08-0331-JLS (WMc)<br><br>**PETITIONER'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |

### Introduction

Petitioner, having been convicted in the San Diego County Superior Court of several counts of sexual assault and one count of drug possession, was sentenced to an indeterminate state prison term of 42 years-to-life. In his petition, he alleges his conviction and imprisonment contravenes the Due Process Clause of the Fourteenth Amendment and asserts three errors of constitutional magnitude.

The court ordered respondent to file an answer, and it has done so. Petitioner traversed the answer. On July 2nd, 2008, United States Magistrate Judge William McCurine, Jr., submitted his Report and Recommendation to United States District Judge Janis L. Sammartino. Petitioner submits here his objections thereto.

//

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

ANTONIO MICHAEL VITALE,

    Petitioner,

vs.

MATTHEW CATE, Secretary, California Department of Corrections and Rehabilitation,

    Respondent.

Case No.08-331 JLS (WMc)

**Argument**

**I**

**There was insufficient evidence as to a lack of consent
to sustain the convictions for forcible rape and
forcible oral copulation as to either victim.**

    Petitioner was convicted of three counts of forcible rape and four counts of forcible oral copulation. The jury found petitioner not guilty of the kidnapping for rape count, and rejected kidnap enhancement allegations.

    The sole issue in this case was whether the prostitutes consented to the sexual intercourse and oral copulation. The two incidents have been described in detail in the Statement of Facts contained in the petition, and repeated in the answer.

    The Magistrate Judge adopts the conclusions of the California Court of Appeal in finding that "Victoria S. testified that when Petitioner was stopped at a traffic light waiting to enter the freeway after picking her up, she told him: "No, I don't want to go. Never mind. I don't want to do this." (Rpt & Rec. At p. 21.)

    However, the jury, in finding Petitioner not guilty of kidnapping and in rejecting the kidnapping enhancement, clearly *did not believe this statement*. It cannot, therefore, be relied upon in terms of demonstrating evidence of non-consent. The other actions of Petitioner in grabbing Victoria by the arm, pulling her hair, were but part and parcel of

the rough sex that she had previously agreed to. It's one of the reasons men like Petitioner use prostitutes like Victoria.

Victoria's statements that she became scared and thought Petitioner was going to kill her are simply her after-the-fact recollections of what was in her mind, *not what she communicated to Petitioner in anyway.*

At no time did Victoria S. testify that she unequivocally told petitioner she did not want to perform the sexual acts she had previously agreed to be paid for. There was no force, and no violence used against her that was not connected to the the agreed upon sex acts.

She freely admitted that, at the time she was approached by petitioner, she was working as a prostitute, selling sex for money. She entered his car she asked if he was a police officer, and when he denied this, she had him expose his penis so that she could touch it. Petitioner told her he wanted oral sex, intercourse, and to spank her. She agreed to perform these acts. They agreed on a price and she agreed to go with petitioner. Once inside his apartment he told her to "suck his dick," and she willingly did. She had removed her own clothes at this time. It is clear that all the acts were consensual up until this time.

While orally copulating petitioner, she tasted urine. She told petitioner she could not handle that and he stopped, then pushed her on the floor and penetrated her. When he "pulled out" of her and urinated on her she began to vomit. He told her, "Good girl. I"ll pay you more." He placed her on the bed and twice spanked her buttocks with a paddle. After placing her in a shower, he took her back to the living room and had intercourse with her in different positions.

*Nowhere in her testimony did she ever indicate that she told petitioner to stop, either during intercourse or oral copulation.* She never stated that she resisted or otherwise communicated to petitioner that she was withdrawing her consent. Other than spanking her with a paddle as previously agreed upon, petitioner never struck her or used any force, violence or threats.

1     Instead, she claimed that after the paddling, the sex acts were "against her will" in that she no longer wanted to be there, *but never said or did anything to communicate this to petitioner*. That does not constitute a withdrawal of her initial consent.

    The real problem with Victoria S. is that she was never paid.

    Margaret W. also admitted that she was a working prostitute on May 23, 2003, when she encountered petitioner on El Cajon Boulevard. Petitioner offered her $300 to spank him with a paddle. She agreed to do this and willingly accompanied petitioner. While she only expressly agreed to the paddling, she conceded that she "assumed" she would also be having sex with petitioner for the $300.

    She complied with petitioner's requests because of "a look on his face." She removed her own shirt and orally copulated petitioner. She willingly removed her clothes. He had her lay on the floor and told her he was going to ejaculate on her chest. Petitioner then orally copulated her, engaged in intercourse, and ejaculated on her body.

    She never resisted or told petitioner that she wanted to leave, and petitioner never threatened her or used any type of violence. Instead, while they were having sex, petitioner "treated her like she was his girlfriend." She testified that she "may have," at some point, told petitioner that she no longer wanted to have sex, but could not be sure of this.

    The Magistrate Judge again adopts the conclusions of the California Court of Appeal. Magistrate Judge McCurine recites and emphasizes the fact that Margaret began crying when Petitioner told her he was a vice cop. But Margaret also testified that she immediately realized that Petitioner was not a police officer. This was simply part of the sexual charade for which Petitioner had promised to pay her.

    The Magistrate states that, "[T]here was no evidence that Margaret consented to have sex with Petitioner, merely that she agreed to accept money to paddle Petitioner." (Rpt & Rec., p. 23.) In actuality, Margaret said that while she expressly agreed to the paddling scenario, she "assumed" they would also be having sex and did not object to

3

this. (RT 169.)

It is undisputed that both prostitutes willingly agreed to accompany petitioner to his apartment and engage in various sex acts in exchange for money. That is what prostitutes do. There is little doubt that had petitioner paid each woman, as agreed, no complaint would ever had been made to police.

The state court's adjudication of Petitioner's claim of insufficient evidence to support the convictions constituted an unreasonable application of *Jackson v. Virginia* (1979) 443 U.S. 307, 319 to the facts of this case. Petitioner objects to the Magistrate Judge's conclusions and recommendation that habeas corpus relief be denied.

## II

**The trial court denied petitioner due process of law and deprived him of a fair trial by refusing the defense request to give an instruction under *People v. Mayberry* regarding a defendant's mistaken, but good faith belief that the complainants consented to the sexual acts.**

Based upon the ambiguous testimony of both prostitutes regarding their alleged withdrawal of consent, and petitioner's statements in his telephone interview with the detective that they consented to all the sexual acts he performed, the defense requested that the court give the so-called *Mayberry* instruction found in CALJIC No. 10.65. The court refused to give the instruction, mis-citing the testimony of the prostitutes by stating that each of them had indicated they became fearful and withdrew their consent to any further sex acts.

"It is well-settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. The general principles of law governing a case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." (*People v. St. Martin* (1970) 1 Cal.3d 524, 531.) The requirement of *sua sponte* instructions arises from the defendant's constitutional right

4

(under the Sixth and Fourteenth Amendments) to have the jury determine every material issue presented by the evidence, as well as the jury's "truth acertainment function." (*People v. Wickersham* (1982) 32 Cal.3d 307, 335; *People v. Barton* (1995) 12 Cal.4th 186, 196; see also *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968.)

In *People v. Mayberry* (1975) 15 Cal.3d 143, the California Supreme Court held that there is no rape if a defendant maintains a reasonable, although mistaken belief that a prosecutrix voluntarily consented to engage in sex. (*Id.* at 156.) Accordingly, the jury must be so instructed where there is evidence that may raise a reasonable doubt as to whether the defendant believed the complaining witness consented to the sex acts charged. (*Id.* at 157.)

A defendant is entitled to instructions, upon request that highlight his theory of the case as long as the requested instruction addresses a legal point rather than specific facts, and is not argumentative or duplicative of other instructions. (*People v. Wright* (1988) 45 Cal.3d 1126, 1135.) If the evidence warrants it, CALJIC No. 10.65 must be given *sua sponte*. (*People v. Castillo* (1987) 193 Cal.App.3d 125-126.)

In *People v. Flannel* (1979) 25 Cal.3d 668, the court, commenting on the duty to provide requested instructions, found the trial court should instruct the jury on "every material question upon which there is *any evidence* deserving of any consideration whatever." (*Id.* at 684, quoting *People v. Carmen* (1959) 36 Cal.2d 768, 773 (emphasis added).) "The fact that evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. That is a question within the exclusive province of the jury." (*Ibid.*)

If the defendant proffers evidence enough to deserve consideration by the jury, i.e., evidence from which reasonable jurors could have concluded the substance of the instructions is true, the court must so instruct. (*Ibid.*) "A trial court should not, however, measure the substantiality of the evidence by undertaking to weigh the credibility of the witness, a task exclusively relegated to the jury." (*Ibid.*) Moreover, doubts as to the sufficiency of the evidence to warrant requested instructions should be resolved in favor

1 of the accused. (*Id.* at 685.)

2 The Magistrate Judge relies upon the opinion of the state Court of Appeal, and fails to address the specific arguments and authorities asserted by Petitioner which demonstrate that the trial court clearly abused its discretion in refusing to give the *Mayberry* instruction and that refusal deprived Petitioner of a fair trial, violating the Due Process Clause of the Fourteenth Amendment. (*Bradley v. Duncan*, 315 F.3d 1091, 1989-1099 (9th Cir. 2002); *Calderon v. Coleman,* 525 U.S. 141 (1998).)

8 And the error was by no means harmless. Consent, whether actual or mistaken, was the centerpiece of this case. The trial court's refusal to issue the requested instruction so infected the trial as to deny petitioner a fair trial and due process of law. (*Estelle v. McGuire,* 502 U.S. 62, 75 (1991) ; *Carriger v. Lewis,* 971 F.2d 329, 334 (9th Cir. 1992) (en banc).)

### III

**The trial court denied petitioner a fair trial by admitting a irrelevant and highly inflammatory video tape of petitioner engaged in consensual sexual conduct with a prostitute in Thailand.**

Police searched petitioner's residence on February 10, 2004, and seized a video tape which depicted petitioner engaging in various sexual activities with a young Asian woman – perhaps in her early twenties, presumably a Thai prostitute. It is graphic and many of the acts shocking. Petitioner's passport reflected that he had traveled to Thailand from the middle of December, 2003, to the middle of January, 2004. Over defense objection, the tape (designated as People's Exhibit 20), and a Thai-to-English transcript were admitted under Evidence Code section 1108.

Petitioner contends that the tape was inadmissible under the Due Process clause of the Fourteenth Amendment.

Relying upon the decision in *Alberni v. McDaniel,* 458 F.3d 860 (9th Cir. 2006),

Magistrate Judge McCurine held that there was no clearly established law as to whether the introduction of improper evidence may violate federal; due process if it renders a trial fundamentally unfair. (Rpt. & Rec. p. 31.)

The Magistrate gives *Alberni* an unjustifiably broad reading. As it notes, prior to the enactment of AEDPA, every circuit court had found that the improper introduction of such inflammatory evidence may violate federal due process. (*Id.* at pp. 865-866.) These decisions were each based upon *Estelle v. McGuire, supra,* 502 U.S. 62. The *Alberni* decision conflicts with other well-established opinions of the Ninth and all other circuit Courts of Appeal.

Petitioner's claim is viable and should be addressed on the merits.

## Conclusion

Petitioner was convicted of multiple counts of rape and forcible oral copulation based upon his bringing prostitutes to his apartment. Having initially agreed to various sex acts, including being paddled and having her hair pulled, each later claimed at some point she no longer wanted continue, *yet neither one expressed that to petitioner.* Nonetheless the jury convicted petitioner of these counts after rejecting the testimony as to the kidnapping charge and allegations. The evidence is insufficient on the issue of consent. And this was exacerbated by the court refusing to issue an instruction regarding a defendant's mistaken but good faith belief that the other person had consented to the sex acts.

Lastly, the court admitted an irrelevant, shockingly inflammatory video which had little, if any, probative value. This video undoubtedly prejudiced the jury against petitioner to the point of denying him a fair trial.

////
////
////
////
////

1 | Federal habeas corpus relief is warranted. Petitioner objects to the Report and
2 | Recommendation to contrary.

4 | Dated: 7/29/08

Respectfully submitted,

*Patrick Morgan Ford*

PATRICK MORGAN FORD,
Attorney for Petitioner
ANTONIO MICHAEL VITALE

*Antonio Michael Vitale v. James Tilton*   Civil No. ED CV _____
VAP (RZ) C.A. No. 08-0331-JLS (Wmc)

## DECLARATION OF SERVICE

I, Esther F. Rowe, say: I am a citizen of the United States, over 18 years of age, and employed in the County of San Diego, California, in which county the within-mentioned delivery occurred, and not a party to the subject case. My business address is 1901 First Avenue, Suite 400, San Diego, CA 92101. I served a *Petitioner's Objections to Report and Recommendation*, of which a true and correct copy of the document filed in the case is affixed, by placing a copy thereof in a separate envelope for each addressee respectively as follows:

Hon. Barry Ted Moscowitz
United States District Court
Southern District
880 Front Street, Suite 4290
San Diego, CA 92101-8900

Antonio M. Vitale, #V75451
Yard B Bld. 3 Cell 111 L
P.O. Box 3030
Susanville, CA 96127

Andrew Mestman
Office of the Attorney General
P.O. Box 85266
San Diego, CA 92186-5266

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 30, 2008, at San Diego, California.

*[signature]*
Esther F. Rowe